IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EMILY N.,[1] | )<br>) |
| Plaintiff, | )<br>) |
| | ) No. 22 C 4271 |
| v. | ) |
| | ) Magistrate Judge |
| KILOLO KIJAKAZI, Acting | ) Maria Valdez |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| | ) |

## MEMORANDUM OPINION AND ORDER

This action was brought under 42 U.S.C. § 405(g) to review the final decision of the Commissioner of Social Security denying Plaintiff Emily N.'s claim for child's insurance benefits. The parties have consented to the jurisdiction of the United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). For the reasons that follow, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is granted.

---

[1] In accordance with Internal Operating Procedure 22 – Privacy in Social Security Opinions, the Court refers to Plaintiff only by her first name and the first initial of her last name.

## BACKGROUND

### I. PROCEDURAL HISTORY

On August 10, 2018, Plaintiff filed a claim for child's insurance benefits, alleging disability beginning January 1, 2018. The claim was denied initially and upon reconsideration, after which she timely requested a hearing before an Administrative Law Judge ("ALJ"). A telephonic hearing was held on August 17, 2021, and all participants attended the hearing by telephone. Plaintiff appeared and testified at the hearing and was represented by counsel. A vocational expert ("VE") also testified.

On December 29, 2021, the ALJ denied Plaintiff's claim for benefits, finding her not disabled under the Social Security Act. The Social Security Administration Appeals Council then denied Plaintiff's request for review, leaving the ALJ's decision as the final decision of the Commissioner and, therefore, reviewable by the District Court under 42 U.S.C. § 405(g). *See Haynes v. Barnhart*, 416 F.3d 621, 626 (7th Cir. 2005).

### II. ALJ DECISION

Plaintiff's claim was analyzed in accordance with the five-step sequential evaluation process established under the Social Security Act. *See* 20 C.F.R. § 404.1520(a)(4). The ALJ found at step one that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of January 1, 2018. At step two, the ALJ concluded that, prior to attaining age 22, Plaintiff had the following severe impairments: scoliosis; lumbar radiculopathy; depression; anxiety; and post-

2

traumatic stress disorder (PTSD). The ALJ concluded at step three that, prior to attaining age 22, Plaintiff did not have an impairment or combination of impairments that meet or medically equal any listed impairments.

Before step four, the ALJ determined that, prior to attaining age 22, Plaintiff retained the residual functional capacity ("RFC") to perform medium work with the following additional limitations: can occasionally climb ladders, ropes, or scaffolds; can no more than frequently climb ramps and stairs, stoop, kneel, crouch, and crawl; can understand, remember, and carry out simple, routine instructions and use judgment limited to simple work-related decisions; and is able to tolerate frequent interaction with supervisors, coworkers, and the general public. At step four, the ALJ determined that Plaintiff had no past relevant work. At step five, based upon the VE's testimony and Plaintiff's age, education, work experience, and RFC, the ALJ found that, prior to attaining age 22, Plaintiff could perform jobs existing in significant numbers in the national economy. Therefore, the ALJ concluded that Plaintiff has not been disabled under the Social Security Act at any time prior to December 5, 2021, the date she attained age 22.

## DISCUSSION

### I. ALJ LEGAL STANDARD

Under the Social Security Act, a person is disabled if she has an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve

3

months." 42 U.S.C. § 423(d)(1)(a). In order to determine whether a plaintiff is disabled, the ALJ considers the following five questions in order: (1) Is the plaintiff presently unemployed? (2) Does the plaintiff have a severe impairment? (3) Does the impairment meet or medically equal one of a list of specific impairments enumerated in the regulations? (4) Is the plaintiff unable to perform her former occupation? and (5) Is the plaintiff unable to perform any other work? 20 C.F.R. § 416.920(a)(4).

An affirmative answer at either step three or step five leads to a finding that the plaintiff is disabled. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992). A negative answer at any step, other than at step three, precludes a finding of disability. *Id.* The plaintiff bears the burden of proof at steps one to four. *Id.* Once the plaintiff shows an inability to perform past work, the burden then shifts to the Commissioner to show the plaintiff's ability to engage in other work existing in significant numbers in the national economy. *Id.*

## II.     JUDICIAL REVIEW

Section 405(g) provides in relevant part that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Judicial review of the ALJ's decision is thus limited to determining whether the ALJ's findings are supported by substantial evidence or based upon legal error. *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000); *Stevenson v. Chater*, 105 F.3d 1151, 1153 (7th Cir. 1997). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate

4

to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). An ALJ's decision should be affirmed even in the absence of overwhelming evidence in support: "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence is . . . 'more than a mere scintilla.' . . . It means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154, (2019) (citations omitted). This Court may not substitute its judgment for that of the Commissioner by reevaluating facts, reweighing evidence, resolving conflicts in evidence, or deciding questions of credibility. *Skinner*, 478 F.3d at 841; *see also Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008) (holding that the ALJ's decision must be affirmed even if "'reasonable minds could differ'" as long as "the decision is adequately supported") (citation omitted).

However, even under this relatively lenient standard, an ALJ is not absolved of her duty to support the decision with record evidence. *See Meuser v. Colvin*, 838 F.3d 905, 910 (7th Cir. 2016) ("We will uphold an ALJ's decision if it is supported by substantial evidence, but that standard is not satisfied unless the ALJ has adequately supported his conclusions."). The ALJ is not required to address "every piece of evidence or testimony in the record, [but] the ALJ's analysis must provide some glimpse into the reasoning behind her decision to deny benefits." *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). In cases where the ALJ denies benefits to a plaintiff, "he must build an accurate and logical bridge from the evidence to his

conclusion." *Clifford*, 227 F.3d at 872. The ALJ must at least minimally articulate the "analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005); *Murphy v. Astrue*, 496 F.3d 630, 634 (7th Cir. 2007) ("An ALJ has a duty to fully develop the record before drawing any conclusions . . . and must adequately articulate his analysis so that we can follow his reasoning . . . ."); *see Boiles v. Barnhart*, 395 F.3d 421, 425 (7th Cir. 2005).

Where conflicting evidence would allow reasonable minds to differ, the responsibility for determining whether a plaintiff is disabled falls upon the Commissioner, not the court. *See Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990). However, an ALJ may not "select and discuss only that evidence that favors his ultimate conclusion," but must instead consider all relevant evidence. *Herron v. Shalala*, 19 F.3d 329, 333 (7th Cir. 1994).

### III. ANALYSIS

Plaintiff argues that the ALJ's decision was in error for several reasons, including: (1) the ALJ's mental RFC assessment fails to accommodate all of Plaintiff's deficits arising from her combined physical and mental impairments; (2) the ALJ failed to properly accommodate Plaintiff's limitations in concentration, persistence, or pace; and (3) the ALJ failed to support her finding that Plaintiff would be capable of performing full-time work at the medium exertional level. Each argument will be addressed below in turn.

### A. The ALJ's Assessment of the Opinions of Plaintiff's Treating Mental Health Professionals and Plaintiff's Alleged Symptoms

Though labelled as a contention concerning the combined effects of her impairments, Plaintiff's first argument primarily boils down to her assertion that the ALJ's "rejection of the opinions of two treating mental health professionals is unsupported by substantial evidence." (Pl.'s Memo. at 7.) Because Plaintiff filed her claim in 2018, the ALJ was required to evaluate the medical opinion evidence under regulations applicable to claims filed on or after March 27, 2017. 20 C.F.R. § 404.1520c (2017). Under these regulations, the ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a). An ALJ is instead required to articulate "how persuasive [she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b). Factors to be considered in this evaluation include supportability, consistency, relationship with the claimant, specialization, and other factors that tend to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. § 404.1520c(a), (c). Supportability and consistency are the two most important factors. 20 C.F.R. § 404.1520c(a); *see* 20 C.F.R. § 404.1520c(c)(2) ("The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be."). An ALJ's decision must explain how she considered the

7

factors of supportability and consistency, but she is not required to explain how she evaluated the other factors. 20 C.F.R. § 404.1520c(b)(2).

Plaintiff's arguments pertain to the opinions of her treating mental health counselor, Steve Baltrukonis, and her treating psychiatrist, Dr. Noorani. Turning first to Mr. Baltrukonis, the ALJ assessed his opinion as follows:

> Steve Baltrukonis, a treating mental health counselor, provided an opinion regarding the claimant's functioning in July 2021. He reported marked restrictions in the claimant's cognitive functioning, although emphasized much of these restrictions are related to chronic pain. The undersigned is unpersuaded. He offered little in the way of objective support other than describing the claimant's "slowed speech" contemporaneous with chronic pain. The overall record is also inconsistent with such a substantial restriction in residual mental functioning. Mental status findings are repeatedly unremarkable, demonstrating evidence of euthymic mood, appropriate affect, good judgment, good insight, and normal thought process. She also performed adequately on simple memory and concentration tasks.

(R. 21-22 (citations omitted). So, in sum, the ALJ discounted Mr. Baltrukonis' opinion because it was not supported by objective evidence and was inconsistent with the medical evidence. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Mr. Baltrukonis' opinion. *See* 20 C.F.R. § 404.1520c(b)(2). The Court declines Plaintiff's invitation to reweigh the evidence in relation to Mr. Baltrukonis' opinion, as that is an endeavor the Court cannot undertake. *See Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021).

Turning to Dr. Noorani, the ALJ assessed her opinion as follows:

> Noorani Noorani, M.D., a treating psychiatrist opined the claimant would have substantial deficits in work-related mental function, would be "off-task" a substantial portion of the workday and would miss more than six days of work each month. However, she also cited very little in

8

> the way of support for her opinion, explaining that the client's "anxiety seems somatically related to back pain." Her own mental status findings on examination of the claimant showed little more than an anxious mood. Even this is not consistent, with the claimant also demonstrating a euthymic mood and full range of affect. Such extensive deficits in residual functioning are also inconsistent with the overall record. For example, she performed adequately on simple memory and concentration tasks. The claimant has reported managing her own finances, spending time with a group of close friends, and watching television.

(R. 22 (citations omitted).)

So, in sum, the ALJ discounted Dr. Noorani's opinion because it was not supported by medical evidence, was inconsistent with Dr. Noorani's own examination findings, and was inconsistent with Plaintiff's demonstrated abilities and daily activities. Given the ALJ's explicit rationales, the Court finds that the ALJ properly assessed and explicated supportability and consistency in discounting Dr. Noorani's opinion. *See* 20 C.F.R. § 404.1520c(b)(2). The Court again must decline Plaintiff's invitation to reweigh the evidence in relation to Dr. Noorani's opinion. *See Gedatus*, 994 F.3d at 900. Mixed in with her arguments concerning the treating provider's opinions, Plaintiff contends that the ALJ failed to consider the effects of Plaintiff's physical and mental impairments combined. The Court finds that contention unavailing as it also amounts to an impermissible request that the evidence be re-weighed. *See Cindy P. v. Kijakazi*, No. 20 C 6708, 2022 WL 2802328, at *4 (N.D. Ill. July 18, 2022) ("While Plaintiff argues that the ALJ did not sufficiently assess her impairments in combination, the Court agrees with

9

Defendant that Plaintiff's contention in that regard amounts to an invitation for the Court to reweigh the evidence.").[2]

Plaintiff also argues that the ALJ improperly discounted her subjective symptoms. In her decision, the ALJ provided a fulsome summary of Plaintiff's alleged symptoms. (R. 19-20.) In finding that Plaintiff was not as limited as alleged from a mental health perspective, the ALJ reasoned as follows:

> The claimant reported she did not feel her depressed mood was significant enough to be "concerned." Records reflect some slight improvement in her mental health symptoms with counseling. Consistent with this, mental status findings are repeatedly unremarkable, demonstrating evidence of a euthymic mood, appropriate affect, good judgment, good insight, and a normal thought process. She performed adequately on simple memory and concentration tasks. The claimant has reported managing her own finances, spending time with a group of close friends, and watching television. These benign mental status findings, some evidence of improvement with treatment, and the claimant's actual reported functioning are inconsistent with greater limitation in mental functioning.

(R. 21 (citations omitted).)

This Court gives "the ALJ's credibility finding special deference and will overturn it only if it is patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017) (internal quotations and citation omitted). "[P]atently wrong . . . means that the decision lacks any explanation or support." *Murphy v. Colvin*, 759 F.3d 811, 816 (7th Cir. 2014) (citation omitted). Under that standard, the Court

---

[2] Plaintiff contends that the ALJ failed to appreciate that her "deficits in work-related mental functioning would be largely attributable to chronic pain." (Pl.'s Memo. at 5.) The Court rejects that contention, as the ALJ specifically considered Plaintiff's alleged pain in evaluating the treating provider's opinions, and, as found above, the ALJ reasonably deemed the opinions unpersuasive and otherwise fully analyzed Plaintiff's mental capabilities.

10

finds that, per the ALJ's explanation and support quoted above, the ALJ reasonably determined that Plaintiff's allegations were not fully corroborated. *See Prill v. Kijakazi*, No. 21-1381, 2022 U.S. App. LEXIS 1072, at *23 (7th Cir. Jan. 13, 2022) ("Substantial evidence supports the ALJ's determination that Prill's account of her subjective symptoms was not consistent with her medical records."); *Ray v. Saul*, 861 F. App'x 102, 107 (7th Cir. 2021) ("Because the ALJ's weighing of [claimant's] reported symptoms in the context of the whole record is supported by substantial evidence, we find no reversible error on this front either."); *Schrank v. Saul*, 843 F. App'x 786, 789 (7th Cir. 2021) ("[T]he ALJ's credibility determination was not 'patently wrong,' because she found [claimant] not credible for several reasons that were adequately supported by the record.") (citation omitted); *cf. Lacher v. Saul*, 830 F. App'x 476, 478 (7th Cir. 2020) ("The ALJ's rationale here was thin, but it was adequate to reflect her conclusion that the objective medical evidence and Lacher's daily activities did not corroborate his subjective symptoms."). Accordingly, the Court finds Plaintiff's first arguments for reversal unavailing.

    **B.**    <u>**Concentration, Persistence, or Pace**</u>

For her second argument, Plaintiff maintains that the ALJ's RFC assessment does not sufficiently account for Plaintiff's limitations in concentration, persistence, or pace. In finding that Plaintiff was not more than moderately limited in that functional area, the ALJ reasoned that Plaintiff "has demonstrated good concentration on examination," she "performed adequately on simple concentration tasks," and she "has reported enjoying watching television, drawing, and playing

11

videogames." (R. 18.) As stated above, to account for Plaintiff's mental limitations, the ALJ restricted Plaintiff to understanding, remembering, and carrying out simple, routine instructions and making only simple work-related decisions. (*Id.* at 19.) Despite these accommodations, Plaintiff argues that "limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate such difficulties." (Pl.'s Memo. at 12.)

However, an ALJ's use of catchall phrases (such as "simple, routine tasks") in an RFC, without more, does not necessitate remand. *See Recha v. Saul*, 843 F.App'x 1, 4 (7th Cir. 2021) (noting that the use of boilerplate language, by itself, is not reversible error). Furthermore, crucially, Plaintiff has not articulated what sort of verbiage the ALJ should have used with respect to her asserted limitations with concentration. *See Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) ("Although [the claimant] complains that the pace requirements are too vague, there is only so much specificity possible in crafting an RFC. The law required no more."). Accordingly, Plaintiff's challenge regarding concentration, persistence, and pace must ultimately fail. *See Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019) ("It is unclear what kinds of work restrictions might address Jozefyk's limitations in concentration, persistence, or pace because he hypothesizes none.").

## C. The ALJ's Physical RFC Assessment

In her last argument, Plaintiff challenges the ALJ's physical RFC assessment. As an initial matter, Plaintiff herself concedes that the ALJ's alleged "errors in her physical RFC are less consequential than those in the mental RFC, as

12

she elicited testimony from the vocational expert that there would still be unskilled jobs available for Plaintiff if she were more appropriately limited to sedentary or light work." (Pl.'s Memo. at 5 n.2.) In any event, the ALJ reasoned as follows in assessing Plaintiff's physical RFC:

> [T]he overall record is inconsistent with greater limitation in residual physical functioning. Although there was evidence of scoliosis on imaging, disc spaces appeared "well-maintained." The claimant did not report significant treatment beyond medication management. She reported "feelings of anxiety and insecurity surrounding her attendance of physical therapy." However, she did ultimately attend some physical therapy appointments and demonstrated "improved tolerance to activity." Regardless, a consultative physical examination showed evidence of only "mild decreased range of motion in the lumbar spine." Motor strength appeared full throughout. There was no evidence of atrophy on examination. The claimant has also repeatedly demonstrated a normal gait. Palpation of her back has also yielded no evidence of tenderness. These benign signs on examination are inconsistent with greater limitation in residual physical functioning, especially given the claimant's relatively conservative course of treatment.

(R. 20 (citations omitted).) The Court finds no error in the ALJ's detailed analysis of Plaintiff's physical capabilities.

Plaintiff contends that " improvement' and 'conservative treatment' or not proper bases upon which to determine that an individual is capable of sustain full-time work." (Pl.'s Memo. at 15.) The Court rejects that argument. The ALJ did not directly equate Plaintiff's improvement and conservative treatment with an ability to perform full-time work, and it was appropriate for the ALJ to consider those factors in reaching her overall determinations. *See Conor B. v. Kijakazi*, No. 20 CV 3342, 2022 WL 4079461, at *10 (N.D. Ill. Sept. 6, 2022) ("So too was it proper for the ALJ to consider the course and effectiveness of Claimant's treatment, as well as

13

Claimant's reported improvement over time with the assistance of medication, work history, and writing of a book.") (citation omitted); *Dante B. v. Kijakazi*, No. 20-CV-1104, 2022 WL 3926050, at *9 (N.D. Ill. Aug. 31, 2022) ("[I]mprovement *is* a relevant factor that ALJs may consider."); *Christopher G. v. Kijakazi*, No. 19 CV 5046, 2022 WL 1989119, at *7 (N.D. Ill. June 6, 2022) ("So too was it appropriate for the ALJ to consider that Claimant's recent and conservative course of treatment . . . appeared to be effective at treating Claimant's depressive symptoms.").

In support of her third argument, Plaintiff also points to a couple discrete pieces of evidence the ALJ purportedly overlooked. However, "[i]t is well-established that an ALJ need not discuss every piece of evidence in the record, so long as she does not ignore an entire line of evidence that supports a finding of disability." *Dzafic v. Kijakazi*, No. 22-2090, 2023 WL 2536340, at *5 (7th Cir. Mar. 16, 2023) (citation and internal quotations omitted). The evidence to which Plaintiff points concerns her spinal conditions. In her decision, the ALJ fully considered Plaintiff's spinal impairments and did not disregard an entire line of evidence. Accordingly, the Court finds Plaintiff's final argument unavailing.

14

## **CONCLUSION**

For the foregoing reasons, the points of error raised by Plaintiff are not well taken. Accordingly, Plaintiff's motion to reverse or remand the Commissioner's decision [Doc. No. 17] is denied, and the Commissioner's cross-motion for summary judgment [Doc. No. 24] is granted.

**SO ORDERED.**                                            **ENTERED:**

*[signature: Maria Valdez]*

**DATE:**     **May 5, 2023**

                                                               **HON. MARIA VALDEZ**
                                                               **United States Magistrate Judge**